**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Action No. 4:08-cr-70** |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **SHAWN COOYA and RITZ WILLIAMS,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM ORDER</u>**

Defendants filed a motion to strike the Government's notice of intent to seek the death

penalty.  (Doc. No. 355.)  Defendants first argue that because the local United States Attorney

recommended that the United States not seek the death penalty in this case, that the notice of

intent to seek the death penalty must be stricken.  (Doc. No. 355.)  In addition, in their motion

Defendants argue the notice of intent to seek the death penalty should be stricken because certain

Native American tribes have objected to the imposition of the death penalty in this case.  (Doc.

No. 355 ¶¶ 36-45.)  In their reply brief, Defendants raise a new argument, challenging the notice

of intent to seek the death penalty on the grounds that it is arbitrary and capricious in light of

sentences imposed in other cases.[1]  (Doc. No. 379.)  The Court will consider these arguments

<u>seriatim</u>.

---

[1] This challenge is wholly unrelated to Defendants' original motion.  Accordingly, the
Court granted the United States an opportunity to respond to these arguments in a surreply brief.
(Doc. No. 386.)  On July 8, 2011, the United States filed a surreply brief.  (Doc. No. 392.)
Defendants filed an unopposed motion for an extension of time to file a response to the
Government's surreply brief on August 1, 2011.  (Doc. No. 403.)  The rules do not contemplate
the filing of responses to surreply briefs without leave of court which was not granted in this
matter.  M.D. Pa. L.R. 7.7.  Further, Defendants' motion for an extension of time was made after
the time for filing a response would have lapsed.  However, because the United States concurred,
the Court granted Defendants' motion, and granted Defendants an additional ten days to file a
response.  (Doc. No. 404.)  Those ten days having lapsed without Defendants filing any
response, the Court will rule on the motions without further delay.

## I.     MOTION TO STRIKE BECAUSE THE LOCAL UNITED STATES ATTORNEY DID NOT RECOMMEND THE GOVERNMENT SEEK THE DEATH PENALTY

Defendants observe that 18 U.S.C. § 3593(a) only permits notice of the intent to seek the death penalty where "the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified."  18 U.S.C. § 3593(a).  Defendants assert that then-United States Attorney Martin Carlson initially recommended that the United States Attorney General not pursue the death penalty against Defendants.  (Doc. No. 355 ¶ 10.) Defendants argue that the local United States Attorney – not the United States Attorney General – is "the attorney for the government," and because the United States Attorney recommended against seeking the death penalty, the notice of intent to seek the death penalty violated 18 U.S.C. § 3593(a).  (Doc. No. 355 ¶ 35; Doc. No. 356 at 2.)

Defendants are unable to muster any case law directly supporting their position.  Each case cited in Defendants' brief that is directly on point reached the opposite conclusion of that advocated by Defendants.  (See Doc. No. 356 at 2.)  Indeed, the Court is unable to locate a single case that would prevent the Attorney General from overruling a local United States Attorney's recommendation regarding whether to seek the death penalty.  See, e.g., United States v. Lee, 274 F.3d 485, 489 (8th Cir. 2001) (affirming death penalty in case where the United States Attorney wished to withdraw the notice of intent to seek the death penalty following the guilt phase of the trial but did not after then-Deputy Attorney General Eric Holder and the Department of Justice review committee concluded that the death notice should not be withdrawn because "the Attorney General is the ultimate decisionmaker on the question of whether the government will seek the death penalty or withdraw a previously filed death notice"); United States v. Cooper, 91 F. Supp. 2d 90, 114 (D.D.C. 2000) (rejecting defendant's argument that United States

Attorney General was not permitted to overrule the United States Attorney's recommendation that the government not seek the death penalty against defendant); United States v. Lee, 89 F. Supp. 2d 1017, 1035 n.16 (E.D. Ark. 2000) (notwithstanding 18 U.S.C. § 3593(a) the Attorney General has the authority to make the final decision whether to seek the death penalty); United States v. Kee, No. S1-98-CR-778, 2000 WL 863119, at *5 (S.D.N.Y. June 27, 2000) (holding 18 U.S.C. § 3593(a) only requires a certification by an attorney for the government that it is "the institutional belief of the government, by virtue of its internal decision-making process, that it is appropriate to seek the death penalty").

This Court is in complete agreement with every other court that has considered the issue and held that under 18 U.S.C. § 3593(a) the Attorney General may direct a United States Attorney to file notice of the government's intent to seek the death penalty even where the local United States Attorney recommends that the government not seek the death penalty.  Under the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591 et seq., the discretion of whether to seek the death penalty belongs to "the Government." Jones v. United States, 527 U.S. 373, 376 (1999).  Therefore, regardless of the personal opinion of any individual government attorney, the Act requires only that a government attorney notify the Defendants and the Court that "the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified."  18 U.S.C. § 3593(a)(1) (emphasis added); see also Cooper, 91 F. Supp. 2d at 114.

The Court further notes that the Attorney General of the United States is "the Nation's chief law enforcement officer." Mitchell v. Forsyth, 472 U.S. 511, 520 (1985).  In that role he is empowered to "supervise all litigation to which the United States, an agency, or officer thereof is

a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties." 28 U.S.C. § 519; see also 28 U.S.C. § 516 ("[T]he conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."). Defendants provide this Court with no reason, and the Court can find none, that the Attorney General's authority to "direct all United States attorneys . . . in the discharge of their respective duties" should not include the authority to supervise death penalty litigation. Accordingly, Defendants' motion will be denied on this basis.

## II.      THE POSITION OF NATIVE AMERICAN TRIBES

Defendants also cite the "institutional position" of the United States regarding its "philosophical commitment to attempt to alleviate the abhorrent conditions under which the former owners of what is now the United States of America, Native Americans[,] were living." (Doc. No. 355 ¶¶ 36-45.)  In furtherance of this commitment, Defendants argue that the United States should have respected resolutions submitted by members of Defendants' respective tribes opposing the application of the death penalty to Defendants.  (Id.)  It is unclear precisely what legal significance Defendants believe these resolutions have.  Defendants fail to identify any authority for a court to overrule a prosecutor's charging decision based on a tribal resolution. Petitions, resolutions, and statements of interested parties may be influential with those making charging decisions.  However, in the absence of some clear authority to the contrary, the Court is loathe to disturb a decision well within the discretion of the prosecuting authority.  See Wayte v. United States, 470 U.S. 598, 607 (1985) (prosecutorial discretion is "particularly ill-suited to

judicial review").[2]

## III.    COMPARATIVE PROPORTIONALITY CHALLENGE

Finally, in their reply brief, Defendants for the first time raise what appears to be a comparative proportionality challenge[3] to the Government's decision to seek the death penalty. Defendants allude to a number of cases in which the United States has declined to seek the death penalty or in which juries have declined to impose a sentence of death.  In addition, Defendants cite one case in which a district court struck a notice of intent to seek the death penalty, finding the decision to seek the death penalty was arbitrary and capricious in light of the sentences imposed against more culpable co-defendants.  See United States v. Littrell, 478 F. Supp. 2d 1179 (C.D. Cal. 2007).[4]  The decision in Littrell, however, appears to be in direct contrast to every other decision, including United States Supreme Court decisions, that have considered the issue.  See, e.g., United States v. Taylor, 648 F. Supp. 2d 1237, 1244 (D.N.M. 2009) (declining to follow Littrell and noting that was the only case in which a court had stricken a notice of intent to seek the death penalty because more culpable defendants were given life sentences); United States v. Lee, No. 4:97-cr-243, 2008 U.S. Dist. LEXIS 109771, at *184 (E.D. Ark. Aug.

---

[2] Of course, prosecutorial discretion is not unfettered.  Wayte, 470 U.S. at 608 (citing United States v. Batchelder, 442 U.S. 114, 125 (1979)).  However, Petitioner's oblique references to the Attorney General's failure to follow the wishes of a tribal council resolution are insufficient to justify judicial review of a lawful charging decision.

[3] Comparative proportionality review refers to the notion that imposition of the death penalty would be "unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime."  Pulley v. Harris, 465 U.S. 37, 43 (1984). This comparative proportionality is in contrast to the Eighth Amendment requirement of proportionality between an individual defendant's crime and the sentence he receives.  Kennedy v. Louisiana, 554 U.S. 407, 419 (2008).

[4] Notably, Defendants devote a mere two sentences to Littrell and fail to even provide a citation to the case in their brief.  (Doc. No. 379 at 8.)

28, 2008) (declining to follow <u>Littrell</u>); <u>United States v. Sablan</u>, 2007 U.S. Dist. LEXIS 87094,

at *17-*19 (D. Colo. Nov. 16, 2007) (expressly rejecting <u>Littrell</u>).

Moreover, even if <u>Littrell</u> were good law, the case is clearly distinguishable from the

present circumstance.  <u>Littrell</u> concerned a vast prosecution against forty defendants concerning

forty-six separate acts of racketeering, including thirteen murders, eleven attempted murders, and

three additional conspiracies to murder.  <u>Littrell</u>, 478 F. Supp. 2d at 1182.  Seventeen of those

defendants were charged with crimes that would permit a jury to return a death sentence.  <u>Id.</u>  In

<u>Littrell</u> the court found the notice of intent to seek the death penalty arbitrary and capricious

because "no rational decision maker could conclude . . . that [the defendant Gary Littrell] should

face execution when the leaders of the organization, the men who ordered Mr. Littrell to kill, and

several men who have committed identical crimes to Mr. Littrell in furtherance of the Aryan

Brotherhood will not face similar punishment."  <u>Id.</u> at 1192.  That is, the court only considered

the reasonableness of the death penalty compared to the penalties sought and obtained against

defendants in the same case.  The court did not consider the proportionality of the death penalty

with the outcome in unrelated cases as Defendants ask this Court to do.  <u>See also</u> <u>Taylor</u>, 648 F.

Supp. 2d at 1244 (distinguishing <u>Littrell</u> on this basis).  Because the Federal Death Penalty Act

does not require or provide for comparative proportionality review, the Court will not accept

Defendants' "invitation" to conduct an evidentiary hearing to determine whether the decision to

seek the death penalty in this case is consistent with some uniform national policy.

## IV.    CONCLUSION

Defendants have moved to strike the notice of intent to seek the death penalty on three

separate grounds.  Defendants have failed to provide any support whatsoever for these grounds.

Indeed, the positions advanced by Defendants have been universally rejected by the Courts and cannot provide a basis for striking the notice of intent to seek the death penalty.

ACCORDINGLY, on this 16th  day of August 2011, **IT IS HEREBY ORDERED THAT** Defendants' motion (Doc. No. 355) is **DENIED**.

  S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania